IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEANNETTE MARIE KRAMER,<br><br>Plaintiff,<br><br>vs.<br><br>DADANT & SONS, INC.,<br><br>Defendant. | CASE NO. 5:22-cv-1736<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Jeannette Marie Kramer filed this copyright infringement action over liturgical candles against Defendant Dadant & Sons, Inc.[1] Doc. 1. Kramer has filed a Motion to Strike Expert Report and Testimony of Christa Laser, Dadant's purported rebuttal expert. Doc. 36. Dadant filed an opposition brief, Doc. 38, and Kramer filed a reply, Doc. 40. For the following reasons, I grant Kramer's Motion in part and deny it in part.

*Kramer's alleged background facts*[2]

Kramer works as a sculptor designing liturgical candles that are used for religious events. Doc. 1, at 3, ¶13. Dadant manufactures and sells liturgical candles. *Id.* at ¶13. In 2002, Kramer and Dadant entered into an agreement for Kramer to design candles for Dadant. *Id.* at ¶15. The agreement states that

---

[1] Kramer also alleged related state-law claims against Dadant.

[2] These background facts are taken from Kramer's Complaint.

"The copyright for each design remains the property of [Kramer]." *Id.* at ¶16; Doc. 1-3, at 1.

In 2006, Kramer created and copyrighted the "Celtic Imperial" liturgical candle. Doc. 1, at 3, ¶18. The *Celtic Imperial*:

> contains a crucifix made of weaved lines, a circle background, and is surrounded by two placards above and below the cross. The bottom band includes the current year and the top placard includes a Greek letter design with doves.

*Id.* at ¶19. It also utilizes a "gold foil transfer process developed proprietarily by [Kramer]." *Id.* at ¶20.

In May 2009, Kramer provided to Dadant equipment—"templates, schematics, and molds"—to manufacture some of Kramer's designs, including the *Celtic Imperial*. Doc. 1, at 4, ¶24. The parties agreed, via email, that the molds would remain Kramer's property, be used only to produce Kramer's designs, and that "[n]o further license is given to produce candles or products using … Kramer's designs or her techniques." *Id.* at ¶¶25–26. The parties also agreed that Dadant would return any design molds to Kramer if Dadant discontinued those designs. *Id.* at ¶¶25, 28.

In July 2009, the parties entered into an amended agreement. Doc. 1, at 3, ¶21. The 2009 agreement states:

> All copyrighted designs without derived works are [Kramer's] to produce Liturgical Candles (Candles) with invaluable trade secrets for gold decoration ... and powder pigment techniques already licensed to [Dadant]. [Dadant] will not lessen any benefits of all these propriety rights.

2

*Id*. at ¶22; Doc. 1-4.

Around 2020, Dadant began selling a liturgical candle called "Aureum." Doc. 1, at 5, ¶31. The *Aureum*:

> contains a crucifix made of weaved lines, a circle back round, and is surrounded by two bands above and below the cross. The bottom band includes the current year and the top band includes a Greek letter design with doves.

*Id*. at ¶32.

In June 2021, Dadant "gave no accounting of sales and payment due to [Kramer]" and "failed to submit catalogues showing … how [Kramer's] works were sold." Doc. 1, at 5, ¶¶33–34. Kramer asked Dadant for its brochures. *Id*. at ¶35. Dadant sent its brochures, and Kramer discovered that Dadant was selling the *Aureum*. *Id*. Kramer then filed this lawsuit, alleging, among other things, that Dadant's *Aureum* infringes Kramer's *Celtic Imperial* copyright. *Id*. at 5.

During discovery, Kramer timely identified her expert, Diane Therese Pinchot, and produced Pinchot's report. Doc. 36, at 1; Doc. 38, at 5. Pinchot's report addresses whether the Dadant's *Aureum* design was copied from Kramer's *Celtic Imperial* design. Doc. 38-1. About three weeks later, Dadant submitted a report by its expert, Christa Laser. Doc. 36, at 1; Doc. 38, at 1. As relevant here, Kramer has filed a Motion to strike Laser's report, arguing that (1) Laser's report reads like an initial report, not a rebuttal report and (2) Dadant disclosed it after the Court's initial report deadline. Doc. 36, at 1–3.

3

Kramer also argues that, if Laser's report is a rebuttal report, it's still late. Doc. 36, at 3. Dadant opposes Kramer's motion and asserts that Laser's report is "purely rebuttal" and therefore timely. Doc. 38, at 2, 4. And if the Court finds that it isn't a rebuttal report, Dadant submits, Laser's report "is substantially justified and harmless." Doc. 38, at 8. In response, Kramer maintains that Laser's report reads like an initial report, not a rebuttal. Doc. 40, at 1–2. Kramer also asserts, for the first time, that Laser's report impermissibly offers legal conclusions. Doc. 40, at 2–4.

*Laser's expert report is a timely rebuttal report*

Kramer argues that Dadant disclosed Laser's report after the initial expert report deadline. Doc. 36. Under the Court's case management plan, the parties' initial reports were due on August 22, 2023, and rebuttal reports were due on September 11, 2023. *See* Doc. 24; *Order*, filed May 9, 2023. Kramer, the party with the burden of proof, disclosed her expert, Pinchot, and Pinchot's initial report on August 22, 2023. Doc. 36, at 1; Doc. 38, at 5.

Dadant disclosed Laser and Laser's report on September 11, 2023. Doc. 36, at 1; Doc. 38, at 4. Dadant asserts that Laser is a rebuttal expert, so her rebuttal report was timely filed. Doc. 38, at 4. While portions of Laser's report aren't proper rebuttal report material, as described more fully below, I find that Laser's report was intended as a rebuttal. Because it was filed on the date rebuttal reports were due, it is timely.

4

*Legal standard for expert reports*

Federal Rule of Evidence 702 provides that an expert may offer an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. While expert testimony may "embrace[ ] an ultimate issue to be decided by the trier of fact," it may not "define legal terms." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994); *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 592–93 (6th Cir. 2014). The court acts as a "gatekeep[er]" and must "decide whether [a] particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Killion*, 761 F.3d at 593 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148, 156 (1999)); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-666, 2017 WL 5467152, at *4 (N.D. Ohio Nov. 14, 2017). That gatekeeping duty:

> includes maintaining "vigilant" guard against expert testimony that "embrace[s] ...actual legal conclusion[s]." *Alvarado v. Oakland Cty.*, 809 F. Supp.3d 680, 691–92 (E.D. Mich. 2011). An expert "[g]enerally ... may not state his or her opinion as to

5

> legal standards" because "the trial judge does not need the judgment of witnesses" to determine what the law is. *United States v. Gordon*, 493 Fed.Appx. 617, 626 (6th Cir. 2012) (citations omitted).

*Design Basics*, 2017 WL 5467152, at *4.

*Much of Laser's expert report is outside the scope of Pinchot's initial report*

Pinchot's initial report addresses whether Dadant's *Aureum* copied from Kramer's *Celtic Imperial*. Doc. 38-1, at 4–9. Pinchot discussed the history of liturgical candles,³ how Kramer made the *Celtic Imperial*, the symbolism of the design elements in it, and a comparison of the *Celtic Imperial* and *Aureum*. *Id*.

Laser's report lists her qualifications as an attorney specializing in copyright law. Doc. 36-1, at 2–3, 6. Laser states that she was asked to "render an expert opinion on whether Dadant & Sons, Inc. infringed the copyright of Jeannette Marie Kramer under 17 U.S.C. § 501, as well as to render an expert opinion in rebuttal to Plaintiff Kramer's designated expert." *Id*. at 1, ¶2. She lists the material that she considered when formulating her report and describes the "Facts [and] Works at Issue," including photos of the *Aureum* and *Celtic Imperial* candles. *Id*. at 4–5. And then Laser states her opinion— "Dadant did not infringe the copyright of Kramer in her candle design Celtic Imperial under 17 U.S.C. § 501." Doc. 36-1, at 1, 5. Laser goes on to explain

---

³ In their reports, Pinchot and Laser call these candles *Paschal* candles. Doc. 38-1, at 1; Doc. 36-1, at 5, ¶19. I used the more general term, *liturgical*, to describe these candles because that's what Kramer uses in her complaint.

6

what a plaintiff needs to show to prevail in a copyright case in the Sixth Circuit. *Id.* at 6–8. She spends the following 25 pages discussing the design symbols commonly found on liturgical candles and those used in the *Aureum* and *Celtic Imperial*. *Id.* at 8–32. At times, Laser references the Sixth Circuit test she's applying. *See, e.g., id.* at 8, ¶37; at 17, ¶65.

Finally, on page 32 of Laser's 40-page report, Laser includes a heading called "Rebuttal to Expert report." Doc. 36-1, at 32. In this section, Laser explains what she believes is wrong with Pinchot's report. *Id.* at 32–39.

Pinchot didn't provide a legal analysis, as Laser herself points out. *See* Doc 32-1, at 32 ("[Pinchot] fails to conduct an appropriate two-step substantial similarity analysis under Sixth Circuit precedent."). So Laser's legal analysis under Sixth Circuit precedent is not in response to Pinchot's report. *See Sinomax USA, Inc. v. Am. Signature Inc.*, No. 2:21-cv-3925, 2022 WL 7180339, at *2 (S.D. Ohio Sept. 30, 2022) ("The purpose of rebuttal reports is not to 'advance new arguments or new evidence outside the scope of the opposing expert's testimony,'" although they "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.") (quoting *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2019 WL 428371, at *2 (S.D. Ohio Feb. 4, 2019) (in turn quoting *Bentley v. Highlands Hosp. Corp.*, No. 15-cv-97, 2016 WL 5867496 at *5 (E.D. Ky. Oct. 6, 2016)). Rather, Laser's legal infringement analysis goes beyond Pinchot's report and therefore is improper.

7

Laser's report is improper for another reason. Much of Laser's report is devoted to citing and applying legal tests, *see* Doc. 36-1, at 6–32, and Laser offers legal conclusions, *see id.*, at 6–8, 32. A report "riddled with legal conclusions" is not a proper expert report. *Summerland v. Cnty. of Livingston*, 240 F. App'x 70, 81 (6th Cir. 2007) (explaining that "experts may *only* 'state[ ] opinions that *suggest* the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue'") (emphasis added) (quoting *Berry*, 25 F.3d at 1353). Dadant concedes that Laser's report provides a "comprehensive … infringement analysis." Doc. 38, at 11. Indeed, Laser's report "reads as a legal brief," which is not a proper expert report. *See Killion*, 761 F.3d at 593 (affirming the trial court's decision to strike an expert report that "'reads as a legal brief' and therefore 'runs afoul of the Sixth Circuit's guidance in *Berry*'"). So these portions of Laser's report will not be considered by the Court.

*The proper portions of Laser's report may remain as rebuttal*

Although portions of Laser's report are improper for the reasons explained above, that doesn't mean that Laser's "entire report … [is] inadmissible." *Design Basics*, 2017 WL 5467152, at *4 (holding that the court may disregard the improper portions of an expert report and consider the proper portions). For instance, Laser's side-by-side comparisons of the *Aureum* and *Celtic Imperial*, Doc. 36-1, at 18–19, is permissible. *See Design Basics*, 2017 WL 5467152, at *4 ("side-by-side comparisons" of design plans are admissible).

8

Laser's description of common liturgical candle features, Doc. 36-1, at 9–16, is helpful and permissible. *See Design Basics*, 2017 WL 5467152, at *4 (the expert's identification of "the standard and functional elements" of the product's design are "helpful" to the court and admissible). And the "rebuttal" portion of Laser's report, Doc. 36-1, at 32–39, is permissible.

One final note. Dadant argues that I should deny Kramer's Motion to strike because Kramer's counsel didn't first comply under Local Rule 37.1 with the good faith duty to meet and confer on a discovery dispute. Doc. 38, at 2–3. Because my decision is based on the substance of the Laser's report, rather than the timeliness of Laser's report, I find that this issue isn't a discovery dispute encompassed by Rule 37.1. *See Design Basics*, 2017 WL 5467152, at *4 (explaining that the court has "an independent 'gatekeeping' duty to ensure that expert testimony is admissible under Fed. R. Evid. 702."). Nevertheless, the parties' filings indicate that before filing the Motion to strike, Kramer's counsel could have, but did not, ask Dadant's counsel at least one threshold question, the answer to which would have limited the scope of both parties' briefs. In the future, before filing *any* motion with the Court, counsel must first speak to one other to attempt to resolve or narrow the dispute. *See* Local R. 37.1.

**Conclusion**

For the reasons explained above, Kramer's Motion to strike Laser's expert report, Doc. 36, is granted in part and denied in part.

Dated: October 3, 2023

                                             */s/ James E. Grimes Jr.*
                                             James E. Grimes Jr.
                                             U.S. Magistrate Judge